**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PATRICK PLUMLEY, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| GENOMIC HEALTH, INC., JULIAN BAKER, FELIX BAKER, FRED COHEN, BARRY P. FLANNELLY, HENRY J. FUCHS, GINGER L. GRAHAM, GEOFFREY M. PARKER, KIMBERLY POPOVITS, EXACT SCIENCES CORPORATION, and SPRING ACQUISITION CORP., ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on July 29, 2019 (the "Proposed Transaction"), pursuant to which Genomic Health, Inc. ("Genomic" or the "Company") will be acquired by Exact Sciences Corporation ("Parent") and Spring Acquisition Corp. ("Merger Sub," and together with Parent, "Exact Sciences").

2. On July 28, 2019, Genomic's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Exact Sciences. Pursuant to the terms of the Merger Agreement, Genomic's stockholders will receive $27.50 in cash and $44.50 in shares of Parent stock for each share of

Genomic common stock they own.

3.  On August 30, 2019, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.  The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Genomic common stock.

9.  Defendant Genomic is a Delaware corporation and maintains its principal executive offices at 31 Penobscot Drive, Redwood City, California 94063. Genomic's common stock is

traded on the NASDAQ Global Select Market under the ticker symbol "GHDX."

10. Defendant Julian Baker is a director of the Company.

11. Defendant Felix M. Baker is a director of the Company.

12. Defendant Fred Cohen is a director of the Company.

13. Defendant Barry P. Flannelly is a director of the Company.

14. Defendant Henry J. Fuchs is a director of the Company.

15. Defendant Ginger L. Graham is a director of the Company.

16. Defendant Geoffrey M. Parker is a director of the Company.

17. Defendant Kimberly Popovits is Chief Executive Officer, President, and Chair of the Board of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Genomic (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of July 26, 2019, there were approximately 37,284,211 shares of Genomic common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28. Genomic is the world's leading provider of genomic-based diagnostic tests that help optimize cancer care, including addressing the overtreatment of the disease.

29. With its Oncotype IQ® Genomic Intelligence Platform, the Company is applying its world-class scientific and commercial expertise and infrastructure to lead the translation of clinical and genomic big data into actionable results for treatment planning throughout the cancer

patient journey, from diagnosis to treatment selection and monitoring.

30. The Oncotype IQ portfolio of genomic tests and services currently consists of the Company's flagship line of Oncotype DX® gene expression tests that have been used to guide treatment decisions for over 1 million cancer patients worldwide.

31. The Company is expanding its test portfolio to include additional liquid- and tissue-based tests, including the Oncotype DX® AR-V7 Nucleus Detect™ test.

32. On July 28, 2019, Genomic's Board caused the Company to enter into the Merger Agreement with Exact Sciences.

33. Pursuant to the terms of the Merger Agreement, Genomic's stockholders will receive $27.50 in cash and $44.50 in shares of Parent stock for each share of Genomic common stock they own.

34. According to the press release announcing the Proposed Transaction:

Exact Sciences Corp. (NASDAQ: EXAS) and Genomic Health, Inc. (NASDAQ: GHDX) today announced that the companies have entered into a definitive agreement under which Exact Sciences will combine with Genomic Health for $72.00 per share in a cash and stock transaction valued at $2.8 billion. The transaction, which has been unanimously approved by the Boards of Directors of both companies, is expected to be completed by the end of 2019. . . .

Transaction Terms

Under the terms of the agreement, for each share of Genomic Health common stock they own, Genomic Health stockholders will receive $27.50 in cash and $44.50 in shares of Exact Sciences stock, subject to a 10% collar centered on Exact Sciences' volume-weighted average price for the 45 trading days ended July 26, 2019.

Based on the parties' closing stock prices as of July 26, 2019, the last trading day prior to today's announcement, the total per-share consideration represents a premium of approximately 19% to Genomic Health's volume-weighted average price ("VWAP") for the last 30 trading days. Upon closing, Exact Sciences shareholders are expected to own approximately 91% of the combined company, and Genomic Health stockholders are expected to own approximately 9%.

Transaction Approvals

The transaction is subject to customary closing conditions and regulatory approvals, including the approval of stockholders of Genomic Health. Felix and Julian Baker and certain funds advised by entities with whom they are affiliated, which collectively own approximately 25.3% of the outstanding shares of Genomic Health common stock, have entered into agreements to vote in favor of the transaction.

Advisors

Centerview Partners and XMS Capital Partners are serving as financial advisors to Exact Sciences and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor. Goldman Sachs & Co. LLC is serving as financial advisor to Genomic Health and Sullivan & Cromwell LLP and Pillsbury Winthrop Shaw Pittman LLP are serving as legal advisors.

35. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 5.6(a) of the Merger Agreement provides:

> From the date of this Agreement until the earlier of the Effective Time and the termination of this Agreement in accordance with Section 7.1, except as provided in Section 5.6(b) or Section 5.6(d), (i) the Company shall, and shall cause its Subsidiaries, and its and their respective officers and directors to, immediately cease, and shall instruct and use its reasonable best efforts to cause its and their respective other Representatives to immediately cease, and cause to be terminated all existing discussions, negotiations and communications with any Persons or entities with respect to any Acquisition Proposal (other than the transactions contemplated by this Agreement), (ii) the Company shall not, and shall not authorize, and shall use its reasonable best efforts not to permit, any of its Representatives to, directly or indirectly through another Person, (A) initiate, seek, solicit, knowingly facilitate, knowingly encourage (including by way of furnishing any non-public information) or knowingly induce or knowingly take any other action which would reasonably be expected to lead to an Acquisition Proposal, (B) engage in negotiations or discussions with, or provide any non-public information or non-public data to, any Person (other than Parent or any of its Representatives) relating to or for the purpose of encouraging or facilitating, any Acquisition Proposal or grant any waiver or release under any standstill, confidentiality or other similar agreement (except that if the Company Board determines in good faith that the failure to grant any waiver or release would be inconsistent with its fiduciary duties under applicable Law, the Company may waive any such standstill provision

in order to permit a third party to make and pursue an Acquisition Proposal) or (C) resolve to do any of the foregoing, (iii) the Company shall not provide and shall, within one (1) Business Day of the date of this Agreement, terminate access of any third party to any data room (virtual or actual) containing any information of the Company or any of its Subsidiaries and (iv) within one (1) Business Day of the date of this Agreement, the Company shall demand the return or destruction of all confidential, non-public information and materials that have been provided to third parties that have entered into confidentiality agreements relating to a possible Acquisition Proposal with the Company or any of its Subsidiaries since July 1, 2018.

36.     Additionally, the Company must promptly advise Exact Sciences of any proposals or inquiries received from other parties. Section 5.6(b) of the Merger Agreement states, in relevant part:

The Company shall (A) promptly (and in any case within twenty-four (24) hours) provide Parent notice (I) of the receipt of any Acquisition Proposal, which notice shall include a complete, unredacted copy of all written proposals, written indications of interest or draft agreements relating to, or other written materials that describe any of the terms and conditions of, such Acquisition Proposal, and (II) of any inquiries, proposals or offers received by, any requests for non-public information from, or any discussions or negotiations initiated or continued (or sought to be initiated or continued) with, the Company or any of its Representatives concerning an Acquisition Proposal, and disclose the identity of the other party (or parties) and the material terms of such inquiry, offer, proposal or request and, in the case of written materials that describe any of the terms and conditions of such inquiry, offer, proposal or request, provide copies of such materials, (B) promptly (and in any case within twenty-four (24) hours) make available to Parent all material non-public information, including copies of all written materials, made available by the Company to such party but not previously made available to Parent and (C) keep Parent informed on a reasonably prompt basis (and, in any case, within twenty-four (24) hours of any significant development) of the status and material details (including material amendments and proposed material amendments) of any such Acquisition Proposal or other inquiry, offer, proposal or request, providing to Parent copies of any additional or revised written proposals, written indications of interest or draft agreements relating to such Acquisition Proposal or other inquiry, offer, proposal or request, or other written materials that describe any of the material terms and conditions of such Acquisition Proposal or other inquiry, offer, proposal or request. The Company agrees that it and its Subsidiaries will not enter into any agreement with any Person that prohibits the Company from providing any information to Parent in accordance with this Section 5.6.

37. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Exact Sciences a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.6(d) of the Merger Agreement provides:

> If, at any time prior to the receipt of the Company Stockholder Approval, the Company Board receives a bona fide written Acquisition Proposal that the Company Board determines in good faith, after consultation with its outside financial advisors and outside legal counsel, constitutes a Superior Proposal that was not initiated, sought, solicited, knowingly facilitated, knowingly encouraged, knowingly induced or otherwise procured in violation of this Agreement, the Company Board may (i) effect a Company Adverse Recommendation Change or (ii) cause the Company to terminate this Agreement pursuant to Section 7.1(c)(ii) in order to enter into a definitive agreement providing for such Superior Proposal if, in each case, (A) the Company Board determines in good faith, after consultation with its outside financial advisors and outside legal counsel, that the failure to take such action would be inconsistent with its fiduciary duties under applicable Law, (B) the Company has notified Parent in writing that the Company Board intends to effect a Company Adverse Recommendation Change pursuant to this Section 5.6(d) or terminate this Agreement pursuant to Section 7.1(c)(ii), (C) the Company has provided Parent a copy of the proposed definitive agreements and other proposed transaction documentation between the Company and the Person making such Superior Proposal, if any, (D) for a period of four (4) Business Days following the notice delivered pursuant to clause (B) of this Section 5.6(d), the Company shall have discussed and negotiated in good faith and made the Company's Representatives available to discuss and negotiate in good faith (in each case to the extent Parent takes action to or does negotiate) with Parent's Representatives any proposed modifications to the terms and conditions of this Agreement or the transactions contemplated by this Agreement so that the failure to take such action would no longer be inconsistent with the Company Board's fiduciary duties under applicable Law (it being understood and agreed that any amendment to any material term or condition of any Superior Proposal shall require a new notice and a new negotiation period that shall expire on the later to occur of (I) two (2) Business Days following delivery of such new notice from the Company to Parent and (II) the expiration of the original four (4)-Business Day period described in clause (D) above), and (E) no earlier than the end of such negotiation period, the Company Board shall have determined in good faith, after consultation with its outside financial advisors and outside legal counsel, and after considering the terms of any proposed amendment or modification to this Agreement, that (x) the Acquisition Proposal that is the subject of the notice described in clause (B) above still constitutes a Superior Proposal and (y) the failure to take such action would still be inconsistent with its fiduciary duties under applicable Law; provided that any purported termination of this Agreement pursuant to this sentence shall be void and

of no force and effect unless the Company shall have paid Parent the Termination Fee in accordance with Section 7.3(a) prior to or substantially concurrently with such termination.

38. The Merger Agreement also provides for a "termination fee" of $92.4 million payable by the Company to Exact Sciences if the Individual Defendants cause the Company to terminate the Merger Agreement.

*The Registration Statement Omits Material Information*

39. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

40. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction.

41. First, the Registration Statement omits material information regarding the Company's and Parent's financial projections.

42. With respect to the Company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate EBITDA and EBIT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

43. With respect to Parent's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate EBITDA and EBIT; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

44. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

45. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Goldman Sachs & Co. LLC ("Goldman").

46. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis—Genomic Health Standalone*, the Registration Statement fails to disclose: (i) the Company's net debt and number of fully diluted outstanding shares; and (ii) the individual inputs and assumptions underlying the discount rate of 9.4%.

47. With respect to Goldman's *Illustrative Pro Forma Present Value of Future Share Price Analysis—Value to Genomic Health Stockholders*, the Registration Statement fails to disclose: (i) the net debt and number of fully diluted outstanding shares of the pro forma combined company; and (ii) the individual inputs and assumptions underlying the discount rate of 9.1%.

48. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Genomic Health Standalone*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9% to 10% and the perpetuity growth rates ranging from 2.0% to 4.0%; (ii) the range of illustrative terminal values for Genomic; and (iii) the number of fully diluted outstanding shares of Genomic common stock.

49. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Pro Forma Value Per Share to Genomic Health Stockholders*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5% and the perpetuity growth rates ranging from 3.0% to 5.0%; (ii) the range of illustrative terminal values for the pro forma combined company; (iii) pro forma net debt for the pro forma combined company; and (iv) the number of outstanding shares of the pro forma combined company following the merger.

50. With respect to Goldman's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Goldman in the analysis.

51. With respect to Goldman's *Premia Analysis*, the Registration Statement fails to disclose: (i) all transactions observed by Goldman in the analysis; and (ii) the individual premiums for the transactions.

52. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

53. Third, the Registration Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing other potential acquirors from submitting superior offers to acquire the Company.

54. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

55. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Genomic Health Board of Directors' Recommendation and Reasons for the Merger; (iii) Opinion of Genomic Health's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Genomic**

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Genomic is liable as the issuer of these statements.

59. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

60. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

62. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Exact Sciences

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants and Exact Sciences acted as controlling persons of Genomic within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Genomic and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants and Exact Sciences was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

69. Exact Sciences also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

70. By virtue of the foregoing, the Individual Defendants and Exact Sciences violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants and Exact Sciences had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 12, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com